UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| WILLIAM BOATENG | * | CIVIL ACTION  NO. 11-1383 |
| versus | * | SECTION J(1) |
| | * | |
| BP, PLC; BP EXPLORATION AND PRODUCTION, INC.; BP AMERICA, INC.; BP PRODUCTS NORTH AMERICA, INC.; and BP INTERNATIONAL LIMITED | * * * * * | JUDGE BARBIER MAGISTRATE JUDGE VAN MEERVELD |

## ORDER & REASONS

Plaintiff William Boateng filed this action against several BP entities (collectively, "BP") seeking compensation for purportedly inventing the technology that was ultimately used to cap the Macondo Well during the 2010 oil spill in the Gulf of Mexico.[1]  Before the Court is BP's Motion to Dismiss for Failure to State a Claim (Rec. Doc. 8; *see also* Rec. Doc. 27 (permitting BP, plc to join motion)), Boateng's opposition (Rec. Doc. 18), and BP's reply (Rec. Doc. 26).  The Court, having considered counsels' arguments, the record, and the applicable law, grants the motion and dismisses Boateng's complaint for the reasons set forth below.

In order to survive a motion to dismiss under Federal Rule 12(b)(6),

> a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.  Although a complaint does not need detailed factual allegations, the allegations must be enough to raise a right to relief above the speculative level.  Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.

---

[1] The case initially was consolidated with Multidistrict Litigation ("MDL") 2179, where it was automatically stayed.  The Court recently severed the case from MDL 2179, lifting the stay. (Rec. Doc. 7).

*Firefighters' Ret. Sys. V. Grant Thornton, L.L.P.*, 894 F.3d 665, 669 (5th Cir. 2018) (citations, quotations, and alterations omitted).

> Boateng's complaint alleges, in relevant part:
>
> Due to the catastrophic nature of the spill and BP's inability to stop it, [BP] sought help and ideas from outside sources. Plaintiff . . . responded to BP's request for help and ideas, providing BP with a . . . detailed proposal of plans to cap the well and shut down the leak . . . on June 10, 2010 and June 11, 2010 and June 25, 2010. BP acknowledged receipt of these ideas in an e-mail on June 12, 2010, in an e-mail of July 2, 2010, and in a letter sent to plaintiff on September 2, 2010. BP did in fact [ ] use methods which were substantially the same as those provided to them by plaintiff in order to cap the well and shut off the leak of oil. BP has refused to compensate plaintiff for their use of his plan and procedure to cap the well and shut off the oil leak. . . . As a direct and proximate result of defendants' actions, plaintiff has suffered damages including, but not limited to, loss of income. Upon information and belief, the ideas submitted by plaintiff to defendants in his proposals were novel to the defendants. Furthermore, knowledge of said ideas were not widespread nor generic. The ideas were for a specific application. Plaintiff at no time intended for BP to use his proposal and plan without compensation to plaintiff. Furthermore, upon information and belief, BP had intent to pay for idea submissions that they used such as the ones submitted by plaintiff.

(Complaint ¶¶ 15-24, Rec. Doc. 1 (paragraph breaks and numbers omitted)). The complaint then states, "[T]he actions of BP . . . present a cause of action in contract." (Complaint ¶ 25). The complaint alternatively pleads that "the actions of BP . . . present a cause of action for misappropriation of plaintiff's idea." (Complaint ¶ 25). The Court will address Boateng's contract claim first.

"[A]n enforceable contract requires a meeting of the minds." *Read v. Willwoods Cmty.*, 165 So. 3d 883, 887 (La. 2015).[2] "A contract is formed by the consent of the parties established through offer and acceptance." La. Civ. Code art. 1927. "Unless the law prescribes a certain

---

[2] The parties appear to agree that Louisiana law governs Boateng's claims.

formality for the intended contract, offer and acceptance may be made orally, in writing, or by action or inaction that under the circumstances is clearly indicative of consent." *Id.*

The essence of Boateng's contract claim is that BP breached a contract with Boateng by using his plans without compensating Boateng. Assuming for the moment that BP actually used Boeteng's plans, the complaint fails to plausibly allege any facts from which it can be reasonably inferred that BP agreed it would pay Boateng for such use. The complaint does not allege, for example, that BP promised—orally, in writing, or through (in)actions clearly indicative of consent—to pay Boateng if it used his plans. The closest the complaint ever comes to making such allegations is when it states that Boateng never "intended for BP to use his proposal and plan without compensation" and that "upon information and belief, BP had intent to pay for idea submissions that they used such as the ones submitted by plaintiff." (Complaint ¶ 23). But alleging that each side subjectively intended that BP would compensate Boateng only highlights the fact that the parties never actually agreed to such an arrangement. Because BP could not breach a contract that did not exist, Boateng's claim for breach of contract must be dismissed.[3]

As to Boateng's alternative "misappropriation of plaintiff's idea" claim, BP argues that the allegations are so vague that it is unclear what legal theory Boateng is attempting to assert. Continuing, BP urges, "In any event, Plaintiff has not plausibly pled any factual allegations that would support an allegation that BP misappropriated any idea, regardless of what legal theory he

---

[3] *Accord Holland v. BP America, Inc.*, No. 11-0580, 2012 WL 761980, at *6 (E.D. Cal. Mar. 7, 2012) ("[P]laintiff fails to allege a mutual agreement as to the price to be paid for any ideas submitted. Instead, plaintiff alleges he reasonably believed he should be entitled to compensation. This shows that there was no mutual assent. . . . [BP's] failure to pay the invoice for the idea submitted does not amount to a breach of contract, as there was no contract formed wherein the parties agreed to the payment of a specific fee for the ideas submitted."); *McIntyre v. BP Expl. & Prod., Inc.*, No. 13-149, 2015 WL 999092, at *2 (D. Alaska Mar. 5, 2015) ("Plaintiff does not allege any specific solicitation by BP directed at Plaintiff, only news reports and informational bulletins which advertise contact information to allow people to volunteer or provide ideas. Moreover, Plaintiff has not alleged any response from Defendants that would suggest a 'meeting of the minds' on any form of essential contract terms." (footnotes omitted)), *aff'd,* 697 F. App'x 546 (9th Cir. 2017).

seeks to allege. (BP Mot. at 5, Rec. Doc. 8-1). Boateng responds that the complaint "was referring to a cause of action based upon [La. Civ. Code art. 2298,] Enrichment without Cause." (Boateng Opp'n at 5, Rec. Doc. 18). Because Boateng appears to concede that the complaint fails to state a claim for "misappropriation," the Court will dismiss that claim.

Finally, while the complaint does not explicitly plead "unjust enrichment" as a cause of action or theory of recovery, the Court will examine whether there is sufficient factual matter to state a claim for unjust enrichment that is plausible on its face. Louisiana Civil Code article 2298 states, in pertinent part:

> A person who has been enriched without cause at the expense of another person is bound to compensate that person. The term "without cause" is used in this context to exclude cases in which the enrichment results from a valid juridical act or the law. The remedy declared here is subsidiary and shall not be available if the law provides another remedy for the impoverishment or declares a contrary rule.
>
> The amount of compensation due is measured by the extent to which one has been enriched or the other has been impoverished, whichever is less. . . .

The elements for an unjust enrichment claim are: (1) there must be an enrichment, (2) there must be an impoverishment, (3) there must be a connection between the enrichment and resulting impoverishment, (4) there must be an absence of "justification" or "cause" for the enrichment and impoverishment, and (5) there must be no other remedy at law available to plaintiff. *Barker v. Maclay Props. Co.*, 648 So. 2d 888, 897 (La. 1995).

Boateng's complaint provides only vague descriptions of what he submitted to BP. In his opposition brief, however, Boateng states that his plan "called for the removal of the bolts so the cap-head could be removed and replaced with a valve. That valve then could be either shut off to stop the leak or connected to a new pipe to pump the oil to the surface." (Opp'n at 5, Rec. Doc. 18). Attached to Boateng's opposition are images depicting the proposal he allegedly submitted to BP, as well as images of the capping stack actually used by BP to stop the discharge. (Rec.

4

Docs. 18-2, 18-4).  Since this additional material is presented by Boateng, the Court will treat it as if it was included in the complaint for purposes of the instant motion.

The Court finds that Boateng's complaint, including the additional descriptions and images included in his opposition, fails to establish that he conferred an actual benefit upon BP. Boateng's proposal was to unscrew the bolts of a flange and place a valve on top of the blowout preventer.  The capping stack and transition spool actually used by BP were far more complex. Boateng's own exhibit depicting images of BP's device next to Boateng's proposed valve reveal that Boateng's proposal was a far cry from what was actually used.  (*See* Rec. Doc. 18-4).  As another district court determined on a Rule 12(b)(6) motion:

> By Plaintiff's own admission there are additions, modifications, and outright differences between his proposal on May 14, 2010, and the evolution of Defendants' ultimate method for capping the Well.  Plainly stated, there are minimal similarities between the ideas submitted by Plaintiff and the final capping method utilized by Defendants. . . .
>
> . . . Anyone familiar with a garden hose has experienced the concept of a valve that can regulate the flow of fluid and ultimately shutoff that flow under pressure. Such a common feature in piping, regardless of the terminology Plaintiff uses to describe its function, can hardly be considered a unique or novel idea. Similar to the court in *Reeves,* this Court finds that even if Plaintiff's idea inspired Defendants' ultimate capping method, Plaintiff has failed to demonstrate that his idea was sufficiently original and novel to confer a benefit to Defendants. Without a benefit conferred, Plaintiff has failed to meet the elements necessary to establish a quasi-contract cause of action.

*McIntyre*, 2015 WL 999092, at *2-3.  The notion that BP was enriched by Boateng's proposal is facially implausible.  Accordingly, the Court will dismiss Boateng's unjust enrichment claim.

Because Boateng's complaint fails to state a claim to relief that is plausible on its face,

**IT IS ORDERED** that BP's Motion to Dismiss for Failure to State a Claim (Rec. Doc. 8) is **GRANTED**, and

**IT IS FURTHER ORDERED** that William Boateng's Complaint (Rec. Doc. 1) is **DISMISSED**.

New Orleans, Louisiana, this 15th day of August, 2018.

_____
United States District Judge